ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>JORGE TORRES RODRÍGUEZ<br><br>Peticionario | KLCE202301480 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>CRIM. NÚM. NSCI202300124<br><br>Proyecto de Denuncia Art. 127-A Código Penal; Art. 6.06 Ley de Armas<br><br>Sobre: Si Procede Imposición de Medida de Seguridad |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 22 de febrero de 2024.

Comparece el peticionario Jorge Torres Rodríguez (señor Torres Rodríguez o peticionario) quien nos solicita que revisemos una *Resolución y Orden Regla 240 de Procedimiento Criminal* emitida por el Tribunal de Primera Instancia, Sala de Fajardo (en adelante TPI) el 29 de noviembre de 2023, notificada el 5 de diciembre de 2023. Mediante referida resolución, el foro primario ordenó que el señor Torres Rodríguez permaneciera recluido en un hospital, a tenor con la Regla 241 de Procedimiento Criminal, 34 LPRA Ap. II, Regla 241. A su vez, ordenó que el denunciado sea evaluado nuevamente el 23 de febrero de 2024 y pautó una vista de seguimiento para el 26 de febrero de 2024.

Número Identificador

SEN2024 _____

Por las razones que exponemos, expedimos el auto de *Certiorari,* confirmamos la Resolución aquí recurrida y devolvemos el caso para la celebración de la vista pautada y que el TPI tome una decisión informada.

**I.**

Por hechos acaecidos el 10 de octubre de 2023 se presentaron denuncias contra el señor Jorge Torres Rodríguez, imputándole haber violado el Artículo 127 A del Código Penal de 2012, 33 LPRA 5186a (Maltrato a personas de edad avanzada) y el Artículo 6.06 de la Ley Núm. 168-2019, Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 466e (Portación y uso de armas blancas). Estas indicaban como sigue:

> Ley 168 Art. 6.06 Grave (2019) Portación y Uso de Armas Blancas
>
> El referido acusado, JORGE TORRES RODRIGUEZ, allá en o para el día 10 de octubre de 2023 y en Vieques; Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Fajardo, ilegal, voluntaria, maliciosa, con conocimiento, a propósito, a sabiendas con intención criminal, y sin motivo justificado UTLIZÓ un cuchillo de cocina, en la comisión del delito de maltrato en su modalidad de amenaza. Consistente en que el aquí acusado, utilizando un cuchillo de cocina, le ponía el mismo en el cuello a la señora Elena Rodríguez Nales, amenazando con matarla si no le daba dinero.
>
> Por el Delito CP Art. 127A Grave (2012)-Ma1trato a personas de edad avanzada.
>
> El referido acusado, JORGE TORRES RODRÍGUEZ, allá en y para el mes de octubre de 2023, y en Vieques, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Fajardo, ilegal, voluntaria, maliciosa y criminalmente, MALTRATÓ a Víctor Torres Sanes, que es una persona de edad avanzada. Consistente en que el aquí imputado, utilizando un cuchillo de cocina amenazó perjudicado, haciéndole amagues con el cuchillo como para cortarlo y agrediéndolo con un tubo de PVC.

El 11 de octubre de 2023 se llevó al señor Torres Rodríguez ante el magistrado para la celebración de la vista de la Regla 6 de Procedimiento Criminal.  La vista no se pudo celebrar debido a que intérprete de señas y labio lectura, que se proveyó de forma virtual, no logró comunicación con el acusado y este no entendía los procedimientos.[1]

Al día siguiente, para la vista de la Regla 6 de Procedimiento Criminal el imputado compareció acompañado de la abogada de la Sociedad para Asistencia Legal de Puerto Rico.  El Tribunal tomó conocimiento judicial que en procedimientos anteriores el acusado había sido encontrado No procesable por el Tribunal.  Luego de escuchar los argumentos de la defensa y del Ministerio Fiscal, el Tribunal suspendió la vista de Regla 6 para la determinación de causa para arresto.  Refirió el caso en carácter de urgencia al procedimiento de procesabilidad bajo la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, R. 240 y pautó una vista para el 27 de noviembre de 2023.  A su vez, expidió una orden para ingreso de emergencia involuntario al amparo de la Ley de Salud Mental de Puerto Rico, Ley Núm. 408-2000 para que los padres del imputados estén tranquilos, el acusado sea atendido y para que esté en un lugar seguro.[2]

El 24 de octubre de 2023 el señor Torres Rodríguez presentó una *Solicitud para que se deje sin efecto la orden y vista al amparo de la Regla 240 de Procedimiento Criminal por falta de jurisdicción y violación al debido proceso de ley*.  Sostuvo que no existía una determinación de causa probable para arresto, conforme a derecho, que diera paso a una acción penal en contra del señor Rodríguez Torres.

---

[1] Vista del 11 de octubre de 2023, minutos 16:50.
[2] Vista del 12 de octubre de 2023, minuto 25:50 en adelante.

El 25 de octubre de 2023 el TPI emitió una Resolución. Allí decretó *No Ha Lugar* a la solicitud de la defensa de que se deje sin efecto la orden y vista al amparo de la Regla 240 de Procedimiento Criminal.

Entretanto, de forma paralela, a tenor con la Ley 408-2000, el 26 de octubre de 2023 en la Sala Municipal de Fajardo, en la causa NACI202300865 se celebró una vista. Ese día, el Tribunal emitió ciertas órdenes para la realización de un estudio social completo, evaluación sobre la discapacidad del señor Torres Santiago y otros trámites a beneficio de éste. Señaló vista de seguimiento para el 7 de diciembre de 2023.[3]

Mientras, el 7 de noviembre de 2023 se celebró la continuación de la vista en cuanto a las denuncias. En síntesis, testificó la señora Janice Marrero Irizarry quien realizó un Informe de Evaluación de Capacidad Funcional del imputado. La señora Marrero Irizarry concluyó que el imputado no tenía la capacidad para comprender el proceso judicial y colaborar con su defensa debido a la limitación lingüística de comprensión y comunicación. El Tribunal acogió la recomendación de la Lcda. Janice Marrero Irizarry y determinó que el denunciado se encontraba *No Procesable* permanentemente. Consecuente, indicó que quedó pendiente de verificar si el imputado representaba algún riesgo viviendo sin tratamiento en alguna residencia de familiares o si existía algún tratamiento que pudiera beneficiarlo para su seguridad y la de otras personas.[4]

Así las cosas, el 28 de noviembre de 2023, la Sociedad Para Asistencia Legal, ante la determinación de no procesabilidad del

---

[3] Apéndice págs. 28-30.
[4] Minuta, Apéndice págs. 31-34; Resolución y Orden de 29 de noviembre de 2023, apéndice pág. 37.

señor Torres Rodríguez, solicitó el archivo de los cargos criminales y comenzar el proceso de ingreso involuntario al amparo de la Ley Núm. 408-2000.

El 29 de noviembre de 2023 en foro primario emitió una Resolución y Orden sobre la Vista de Procesabilidad. De esta surge que compareció el denunciado Jorge Torres Rodríguez, quien se encontraba internado en el Hospital Dr. Ramón Fernández Marina, representado por abogados de la Sociedad para Asistencia Legal, así como los abogados del Departamento de Salud, el Ministerio Fiscal y otros funcionarios. Ese día declaró el Dr. William Lugo, psiquiatra del Estado, quien manifestó, en síntesis, que conocía al denunciado pues lo evaluó unos meses antes en un procedimiento similar bajo la Regla 240 de Procedimiento Criminal donde al denunciado se le acusó por delitos violentos contra sus familiares como ocurre de igual manera en este caso.[5] Con relación a si el denunciado, por sus condiciones mentales, sus limitaciones comunicativas y de uso de sustancias controladas, evidenciadas en su historial previo, presenta algún riesgo para su seguridad o la de las personas cercanas a él, indicó que ciertamente el uso de sustancias contraladas sirve de detonante para que este se comporte de manera violenta con sus familiares y personas cercanas. Entendió que esto implica un riesgo para su seguridad o la de otras personas.[6] Concluyó el doctor Lugo que había que tomar alguna medida para que el denunciado no pueda utilizar sustancias controladas. También declaró el Sr. Israel Peña del Hospital Ramón Fernández Marina, e informó que el denunciado se encontraba estable en la referida Institución.

---

[5] Resolución y Orden del 29 de noviembre de 2023, apéndice pág. 37el.
[6] Íd.

La defensa, solicitó el archivo del caso criminal y del proceso bajo la Regla 240 de Procedimiento Criminal, para que el caso continuara en la Sala de Salud Mental a tenor con la Ley 408-2000. El Ministerio Público se opuso. El Tribunal determinó que el denunciado presentaba un riesgo para su seguridad y la de otras personas estando en la libre comunidad. A tales efectos determinó lo siguiente:

> "[D]e forma responsable y en ánimo de proteger la seguridad del denunciado y la de sus familiares, con quien este vive y contra quienes ha incurrido en conducta violenta según se ha alegado en más de un proceso criminal dentro de un corto periodo de tiempo, el Tribunal dispone y ordena que el denunciado permanezca en el Hospital Dr. Ramón Fernández Marina a tenor con la Regla 241 de las de Procedimiento Criminal."

En consecuencia, ordenó que el denunciado fuese evaluado el **23 de febrero de 2024** y señaló vista de seguimiento en este caso para el **26 de febrero de 2024**. Ese día, el Dr. William Lugo emitirá sus recomendaciones al Tribunal.[7]

Entretanto, según los documentos incluidos en el apéndice del recurso, el 7 de diciembre de 2023 se llevó a cabo la vista en la causa civil NACI202300685 bajo la Ley 408-2000.[8] Entre otros asuntos esbozados, el representante de la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA) expresó que aún no había un diagnóstico de salud mental. Trascendió de la vista que se estaba en espera de la resolución de la Regla 240 y la recomendación del Tribunal. El Tribunal reconoció que había

---

[7] Resolución del 27 de noviembre de 2023, apéndice págs. 37-40.

[8] Surge de la Minuta, apéndice págs. 41-44, que a la vista de seguimiento mediante videoconferencia comparecieron la Sra. Anamarys Molina Colón, Coordinadora de la Ley 408 del Hospital Ramón Fernández Marina, la Lcda. Vivian Enid Díaz Cáceres de la Sociedad para Asistencia Legal del Programa de Salud Mental en representación de Jorge Torres Rodríguez, el Lcdo. Aníbal Lugo Irizarry representando a ASSMCA (Administración de Servicios de Salud Mental y Contra la Adicción), la trabajadora social de Servicio Orientados a la recuperación de ASSMCA, la técnico del Departamento de la Familia Local de Vieques y el Lcdo. Fabio A. Quiñones Zayas del Departamento de Salud y la Coordinadora de Servicios de la de la Región Este de MAVI, así como el Coordinador Auxiliar de Programas Judiciales.

dos procesos corriendo a la vez. Luego de escuchados los argumentos el foro primario determinó lo siguiente:

- Se tiene que evaluar la comparecencia de los padres para la coordinación de servicios al paciente.
- Se emitirá orden a las partes para la búsqueda de un hogar permanente de acuerdo con las discapacidades auditivas de Jorge Torres Rodríguez.
- Se autorizó al licenciado Quiñones Zayas enviar el informe a MAVI.
- Se ordenó al Departamento de la Familia ausculte y provea una lista de los diferentes hogares que reciben personas estables en salud mental y que reciben personas con diferentes discapacidades, ya sean auditivas o de movimientos.
- Se ordenó citar a Sr. Néstor Torres Zenquis y al Departamento de la Familia.
- Se señaló vista de seguimiento mediante videoconferencia para el **29 de febrero de 2024** a las 2:00 pm.

Mientras, en desacuerdo con la Resolución y Orden emitida en la causa criminal el 29 de noviembre de 2023, el señor Torres Rodríguez presentó el recurso de *Certiorari* con los siguientes señalamientos de error:

> **Primero:** El TPI violó el derecho del peticionario a un debido proceso de ley, y abusó de su discreción al activar una medida de seguridad en un caso donde ni siquiera se ha determinado causa para arresto, no existe una determinación de inimputabilidad, mucho menos una sentencia, según requiere el Art. 82 del Código Penal y el principio de judicialidad.

> **Segundo:** El TPI violó el derecho del peticionario a la igual protección de las leyes, según pautado en Jackson v. Indiana, 406 US 715 (1972), al activar una medida de seguridad, que constituyó una pena de prisión sin denuncia, acusación, sin juicio ni sentencia y un castigo cruel e inusitado. Una vez se declaró la o procesabilidad permanente del imputado, correspondía al TPI sobreseer las denuncias y ordenar su egreso o iniciar el proceso de evaluación para internación civil—encontrada en la Ley de Salud Mental de Puerto Rico –- para aquellos ciudadanos que, por su condición mental, no pueden enfrentar un proceso penal en un futuro próximo.

La Oficina del Procurador General, en representación del Pueblo de Puerto Rico presentó su escrito. Con el beneficio de ambas comparecencias, disponemos.

**II.**

**A.**

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Pueblo v. Rivera Montalvo, 205 DPR 352 (2020). A diferencia del recurso de apelación, el tribunal superior puede expedir el auto de *certiorari* de manera discrecional. Pueblo v. Rivera Montalvo, *supra*, pág. 372; Pueblo v. Díaz De León, 176 DPR 913, 917-918 (2009). Sin embargo, esa discreción no es irrestricta. Pueblo v. Rivera Montalvo, *supra*. El Tribunal Supremo ha indicado que la discreción significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009); García v. Padró, 165 DPR 324, 334 (2005); Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, *supra*, pág. 211. Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. Pueblo v. Rivera Santiago, *supra*, pág. 581; S.L.G. Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*. La referida regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros de instancia ostentan un alto grado de discreción en el manejo procesal de un caso. Meléndez Vega v. Caribbean Intl. News, 151 DPR 649, 664 (2000). Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro únicamente cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho. Pueblo v. Rivera Montalvo, *supra,* pág. 373; Pueblo v. Irizarry, 156 DPR 780, 788-789 (2002).

**B.**

Por imperativo constitucional, a ninguna persona se le privará de su propiedad o libertad sin un debido proceso de ley. Pueblo v. Rivera Montalvo, *supra*, pág. 364. Como corolario a ese

derecho, un acusado de cometer un delito no puede enfrentar juicio a menos que sea procesable. Pueblo v. Rivera Montalvo, *supra*; Godinez v. Moran, 509 US 389, 396 (1993); Pate v. Robinson, 383 US 375, 378 (1966). Por procesabilidad se refiere a "la lucidez con la que un imputado de delito puede entender la naturaleza y el procedimiento criminal al que se enfrenta". Pueblo v. Rivera Montalvo, *supra*; citando a Pueblo v. Pagán Medina, 178 DPR 228, 237 (2010); Ruiz Ramos v. Alcaide, 155 DPR 492, 499 (2001). Según el profesor Chiesa Aponte, "se trata de una exigencia de que el acusado pueda entender la naturaleza de los procedimientos, de forma que pueda ayudar —a su abogado y a sí mismo— a su mejor defensa". Pueblo v. Rivera Montalvo, *supra*, que cita a E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. III, pág. 348. Sobre el particular, se ha reiterado que el juez que preside la sala es responsable de "velar por que en todo momento la persona denunciada o acusada se encuentre procesable". Pueblo v. Rivera Montalvo, *supra;* citando a Pueblo v. Pagán Medina, *supra*.

Las Reglas 239, 240 y 241 de Procedimiento Criminal codifican esta exigencia a nivel estatutario. En particular, la Regla 239 de Procedimiento Criminal, 34 LPRA Ap. II, R. 239, establece que, "[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada." Al utilizar la frase mentalmente incapacitada, la Regla se refiere al concepto de procesabilidad. Pueblo v. Rivera Montalvo, *supra*; Pueblo v. Pagán Medina, *supra*, pág. 237; Pueblo v. Castillo Torres, 107 DPR 551, 555 (1978).

La Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, R. 240, establece el procedimiento a seguir para salvaguardar este derecho.

(a) Vista; peritos. **En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere evidencia, además de la opinión del representante legal del imputado o acusado, que estableciere mediante preponderancia de la prueba que el acusado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación, suspenderá los procedimientos y señalará una vista para determinar el estado mental y/o funcional del acusado**. Una vez se señale esta vista, deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental y/o funcional. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. En estos casos, la representación legal del imputado o acusado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista de que se trate.

(b) Efectos de la determinación. Si como resultado de la prueba el tribunal determinare que el acusado está mentalmente y/o funcionalmente capacitado, continuará el proceso. **Si el tribunal determinare lo contrario, podrá ordenar la reclusión del acusado en una institución adecuada.** En aquellos casos en que el tribunal hallare que el imputado o acusado padece de alguna condición que no le permite comprender el proceso y colaborar con su defensa podrá ordenar, de entenderlo necesario, que éste sea ingresado en un centro de adiestramiento para el desarrollo de destrezas de vida independiente. Si luego de así recluirse al acusado el tribunal tuviere base razonable para creer que el estado mental y/o funcional del acusado permite la continuación del proceso, citará a una nueva vista que se llevará a cabo de acuerdo con lo provisto en el apartado (a) de esta Regla, y determinará entonces si debe continuar el proceso. (Énfasis suplido).

[……..]

La Regla 240 no solo establece un mecanismo que garantiza el debido proceso de ley constitucional a un imputado de delito, sino que hace al juez de instancia custodio de ese mecanismo, imponiéndole un deber ineludible. Pueblo v. Rivera Montalvo, *supra,* pág. 365; citando a Pueblo v. Pagán Medina, *supra*, pág. 239. Si al amparo de la Regla 240, *supra*, se determina finalmente que el acusado no es procesable, este permanecerá bajo la jurisdicción del tribunal, quien deberá regirse por lo que dispone la Regla 241, 34 LPRA Ap. II, R. 241. Pueblo v. Rivera Montalvo, *supra,* pág. 366; Pueblo v. Pagán Medina, *supra*, pág. 245; Ruiz Ramos v. Alcaide, *supra*, pág. 501. Otro de sus efectos es la suspensión del procedimiento criminal, en aras de salvaguardar el derecho del acusado hallado judicialmente procesable a un juicio justo, a tenor con la cláusula constitucional de debido proceso de ley. Ramos v. Alcaide, *supra*, pág. 501. La suspensión del proceso criminal, en virtud de una determinación de improcesabilidad, pretende evitar la injusticia de requerirle a un acusado que enfrente un proceso criminal cuando éste no está mentalmente capacitado para ayudar en su defensa, lo cual podría culminar en una convicción errónea. Íd.

La aludida Regla 241, de Procedimiento Criminal, 34 LPRA Ap. II, R. 241 establece el Procedimiento para Imposición de la Medida de Seguridad, a saber:

> Cuando el imputado fuere absuelto o hubiere una determinación de no causa en vista preliminar por razón de incapacidad mental y/o funcional, o **determinación de no procesabilidad permanente**, o se declare su inimputabilidad en tal sentido, **el tribunal conservará jurisdicción sobre la persona y podrá decretar internarlo en una institución adecuada para su tratamiento**, si en el ejercicio de su discreción determina conforme a la evidencia presentada que dicha persona por su peligrosidad constituye un riesgo para la sociedad o que se beneficiará con dicho tratamiento**. La condición de sordera profunda,

severa, moderada o leve, ni ninguna otra situación de hipoacusia o condición que le impida comunicarse efectivamente, por sí sola, será suficiente para que, en ausencia de los demás requisitos establecidos en estas Reglas, el tribunal conserve jurisdicción sobre la persona y decrete su ingreso a una institución. **En caso de ordenarse internarlo, la misma se prolongará por el tiempo requerido para la seguridad de la sociedad y el bienestar de la persona internada.** En todo caso será obligación de las personas a cargo del tratamiento informar trimestralmente al tribunal sobre la evolución del caso. (Énfasis dado).

[……..]

El Tribunal Supremo de Puerto Rico ha afirmado que "[f]rente a una determinación de no procesabilidad permanente de un individuo, el Estado tiene dos (2) opciones, a saber: dejarlo en la libre comunidad o iniciar los procedimientos de internación civil." Pueblo v. Santiago Torres, 154 DPR 291, 312-313 (2001), citando a Jackson v. Indiana, 406 US 715, 738 (1972). Bajo el poder de *parens patriae*, el Estado tiene un interés legítimo en, (1) cobijar y proveerle al individuo aquel cuidado que por razón de su condición no puede brindárselo él mismo, incluyendo un tratamiento que mejore su condición; (2) proteger a la ciudadanía ante el posible peligro que representa el individuo; y (3) prevenir que el individuo se haga daño a sí mismo. Íd., pág. 313. El imputado, de otra parte, posee un interés fundamental de que no se restrinja su libertad sin un debido proceso de ley. Íd.

A esos fines, el Tribunal Supremo en Pueblo v. Santiago Torres, *supra*, pág. 314, pautó que, "durante la vista, las partes también presentarán prueba a los efectos de determinar si debido a su condición mental, el imputado constituye un riesgo para sí y para la sociedad." De ser así, se ha indicado que "el ingreso indefinido de un acusado improcesable generalmente resulta justificado cuando la persona recluida cumple con los estándares

para ser internado involuntariamente mediante el procedimiento de internación civil contemplado por ley, en protección de sí mismo, de otras personas o de la propiedad." Ruiz v. Alcaide, *supra*, pág. 510-511.

Agregó el Tribunal Supremo, en Pueblo v. Santiago Torres, *supra,* pág. 314 lo siguiente:

> De concluir el tribunal que, por razón de su estado mental, el individuo es un riesgo para sí mismo o para otras personas, dispondrá que en un término razonable se inicien los procedimientos para que éste reciba tratamiento de conformidad con la Ley 408 de 2 de octubre de 2000 conocida como la Ley de Salud Mental de Puerto Rico. (en adelante Ley de Salud Mental).
>
> **Es decir, en el supuesto de no procesabilidad permanente, el tribunal, tras considerar el grado de peligrosidad del individuo -tanto para sí como para la sociedad- como consecuencia de su condición mental, archivará los cargos en su contra y, lo pondrá en libertad o dispondrá que se inicien los procedimientos conforme a la Ley de Salud Mental**.
>
> Resolvemos, por tanto, que de transcurrir un tiempo razonable sin hallar procesable a un imputado, deberá señalarse una vista para determinar si éste es no procesable permanentemente. El tribunal notificará y celebrará una vista exclusivamente a tales fines, en **donde de determinar la no procesabilidad permanente, archivará los cargos**, y dispondrá si lo libera **o si ordena que se proceda con los trámites de internación civil, conforme con la Ley de Salud Mental**, supra. Pueblo v. Santiago Torres, *supra*, págs. 314-315. (Énfasis nuestro).

### III.

El peticionario, por conducto de su representación legal, alega que una vez se determinó la no procesabilidad permanente de su representado, procedía la desestimación y archivo de los proyectos de denuncia. Adujo que no procedía la medida de seguridad, a tenor con la Regla 241 de Procedimiento Criminal, porque el peticionario nunca fue procesado criminalmente. Indicó que la medida que se le impuso constituye una pena indeterminada sin sentencia, lo que viola el debido proceso de ley.

Reiteró que, a partir del 7 de noviembre de 2023, cuando el peticionario fue declarado no procesable permanentemente, debió concluir el proceso criminal, archivarse los proyectos de denuncia y referir el asunto para su internación civil a través de la Ley de Salud Mental, a tenor con lo determinado en Pueblo v. Santiago Torres, *supra*.

La Oficina del Procurador General, por su parte, nos informó que surge del expediente que en un informe sometido por ASSMCA, en su pasado proceso de internación civil sobre otro caso, se indicó que el peticionario tiene diagnósticos de esquizofrenia, discapacidad intelectual, que sufre depresión, que usa "polisustancias" y que tiene dificultad para comunicarse porque tiene discapacidad auditiva. Expuso que las denuncias sobre los hechos que aquí se consideran, no son las únicas que se han presentado contra el peticionario, quien en el año 2022 también fue arrestado porque agredió a sus progenitores. Indicó que en ese procedimiento culminó en un proceso de internación civil, al amparo de la Ley Núm. 408-2022, porque el imputado fue declarado, en ese entonces, no procesable permanentemente. Aseveró que, de ese trámite, el denunciado salió del hospital y regresó a vivir con sus padres. Que luego de ello, ocurrieron las denuncias por un incidente del 10 de octubre de 2023, donde también fue declarado no procesable permanentemente. El Procurador aludió al proceso de emergencia paralelo a tenor con la Ley Núm. 408-2000 sobre internación civil.[9] Agregó que, en ese procedimiento civil, "el tribunal pautó una vista de seguimiento para el 29 de febrero de 2024. De ese trámite civil, en el que el Departamento de Justicia no forma parte ni interviene, depende

---

[9] Escrito en Cumplimiento de Orden presentado por la Oficina del Procurador General, pág. 13.

que el señor Torres Rodríguez reciba los servicios y la ayuda que necesita, lo que a su vez evitaría que sus padres, personas de edad avanzada, sigan siendo víctimas de los incidentes acaecidos con el peticionario".[10]  Tras ello, el Procurador nos solicitó que, ante el hecho de que el tribunal determinó que el peticionario constituye un peligro para sí y para los demás y la recurrencia de la situación entre este y sus padres, ordenemos al foro primario a remitir el asunto al trámite de internación civil.  Nos requirió también que ordenemos que apercibamos de la urgencia de que se atienda el asunto con premura y urgencia.

Vemos que ambas partes nos solicitan que el foro primario remita presente causa al trámite de internación civil a tenor con la Ley 408-2000.

De la Resolución y Orden que revisamos, así como del expediente, surge que el 7 de noviembre de 2023 el TPI determinó que el denunciado se encontraba *No Procesable* permanentemente.[11] Para evaluar si el acusado representaba algún riesgo o peligro para su seguridad o la de otros, el foro primario llevó a cabo una vista el 29 de noviembre de 2023.  Luego de escuchar las declaraciones del Dr. William Lugo, psiquiatra del Estado y del señor Israel Peña del Hospital Ramón Fernández Marina, el tribunal de instancia entendió que el denunciado presenta un riesgo para su seguridad y/o la de otras personas estando en la libre comunidad.  A tales efectos, el foro primario expresó que "de forma responsable y en ánimo de proteger la seguridad del denunciado y la de sus familiares, con quien este vive y contra quienes ha incurrido en conducta violenta según se ha alegado en más de un proceso criminal dentro de un corto

---

[10] Íd., pág. 14.
[11] Véase Resolución y Orden del 29 de noviembre de 2023, apéndice pág. 37.

periodo de tiempo, el Tribunal dispone y ordena que el denunciado permanezca en el Hospital Dr. Ramón Fernández Marina a tenor con la Regla 241 de las de Procedimiento Criminal".  Acto seguido ordenó una nueva evaluación para el señor Torres Rodríguez para el 23 de febrero de 2024 y señaló una vista de seguimiento para el 26 de febrero de 2024.  Para ese día, le requirió al Dr. William Lugo emitir sus recomendaciones al Tribunal.

Como vemos, el foro primario suspendió los procesos criminales incoados contra el señor Torres Rodríguez y decretó que este no era procesable.  El trámite al amparo de la Regla 240 de Procedimiento Criminal está diseñado para garantizar el debido proceso de ley al imputado y, además, torna al juez de instancia el custodio de ese mecanismo. Véase Pueblo v. Rivera Montalvo, *supra.*  En ánimo de proteger al imputado y a sus familiares, el foro primario ordenó una nueva evaluación con el psiquiatra del estado para el 23 de febrero de 2024 y luego, la vista de seguimiento para el 26 de febrero de 2024.  Ese día el Dr. William Lugo, psiquiatra del Estado, emitirá las recomendaciones al Tribunal.

De acuerdo con las circunstancias que permean en este caso, en que no es la primera vez que al acusado se le imputan acciones contra sus progenitores, entendemos que la determinación del foro primario es razonable y no amerita nuestra intervención.  Resulta adecuado que el Tribunal, como custodio del proceso, escuche las recomendaciones del perito del Estado antes de emitir una decisión final.

Mientras ello ocurre, como el imputado fue declarado no procesable, el Tribunal ordenó que este continuara recluido en el Hospital Dr. Ramón Fernandez Marina.  Esta medida de cautela y

protección de la seguridad del acusado y la de sus parientes, no contraviene la Regla 241 de Procedimiento Criminal. No divisamos que, en su actuación, el foro primario incurriera en prejuicio, parcialidad, error manifiesto o abuso de su discreción.

Una vez el foro primario celebre la vista, entonces determinará el curso a seguir, lo que incluye decretar si refiere el caso al ámbito civil que provee la Ley 408-2000. La decisión que se tome debe salvaguardar la seguridad del imputado, la de sus progenitores y demás personas.

## IV.

Por las razones antes expresadas expedimos el Auto de Certiorari y confirmamos la resolución contra la que aquí se recurrió. Devolvemos el caso al foro de instancia para que proceda con la vista pautada para el 26 de febrero de 2023 y emita su determinación en cuanto a la causa de epígrafe, conforme la prueba que allí reciba.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Salgado Schwarz concurre con la siguiente expresión: "El Juez Salgado Schwarz hubiera denegado la expedición del auto discrecional, habida cuenta que no requiere expresión nuestra, es correcta en derecho y la vista de seguimiento está próxima a celebrarse."

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones